IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RUBEN ESCANO,**

      **Plaintiff,**

**v.**                                **No. 2:25-cv-00513-JB-JHR**

**VERIFIED DOCU SERVICE, INC. and
JARREN CLORES a/k/a BRANDON CLORES,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S
SECOND MOTION TO COMPEL DISCOVERY [DOC. 82]**

THIS MATTER comes before the Court on Pro Se Plaintiff Ruben Escano's *Second Motion to Compel Discovery from Defendant Verified Docu Service, Inc. and for Costs* ("motion to compel") [Doc. 82]. Verified Docu Service filed a response, [Doc. 89], and Escano filed a reply [Doc. 91]. Having reviewed the briefing, case record, and applicable law, the Court GRANTS IN PART Escano's motion to compel discovery and grants Escano's request for attorney fees and costs.

## I.    PROCEDURAL BACKGROUND

Escano filed suit against Defendants on May 9, 2025, in New Mexico state court for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., the New Mexico Unfair Trade Practices Act, NMSA 1978, § 57-12-22, and trespass to chattels. [Doc. 1, at 18–23]. Defendants removed to federal court on June 1, 2025, and answered the complaint on June 6th. [Docs. 1, 3, 4]. Escano alleged that between August 24, 2018, and May 11, 2024, he received at least fifty-eight auto-dialed telemarketing calls from Verified Docu Service despite his number's listing on the National Do Not Call Registry. [Doc. 1, at 11–12]. Escano further alleged that Verified Docu Service would instruct its employees not to identify their employer and "spoofed"

1

their calls so that Escano's caller ID would not reflect Verified Docu Service's number. [Doc. 1, at 12]. However, all calls would market Verified Docu Service's debt consolidation services, and a representative confirmed to Escano that the company had directed the calls. *Id.*

In its answer, Verified Docu Service denied that it spoofed its phone numbers, instructed employees to not identify it on calls, marketed debt consolidation services, or was responsible for the calls Escano alleged he received. [Doc. 4, at 4–5]. The Court issued a scheduling order on September 3, 2025, and the parties began discovery. [Doc. 19]. Escano filed his first motion to compel on December 30, 2025, which the Court denied as untimely on April 27, 2026. [Doc. 83]. Escano filed his second motion to compel on April 24, 2026, seeking to compel supplemental disclosures from Verified Docu Service on interrogatories nos. 20, 21, and request for admission no. 5. [Doc. 82].

## II.    APPLICABLE LAW

Discoverable material includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors include the importance of the issues at stake, the importance of the sought material to resolving those issues, the amount in controversy, the parties' resources and relative access to information, and the burden of producing the sought material compared to its likely benefit. *Id.* Courts enjoy considerable discretion to balance these factors when permitting or denying discovery. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). The scope of discovery is presumptively broad: material that has any possibility of relevance to a claim or defense, even if the material itself is not admissible at trial, may be discoverable. Fed. R. Civ. P. 26(b)(1); *Sugar v. Tackett*, No. 20-cv-00331, 2021 WL 5769463, at *4 (D.N.M. Dec. 6, 2021) (quotation omitted).

This liberal treatment of discovery does not require courts to approve an "unwieldy, burdensome, and speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*,

619 F.3d 1151, 1163 (10th Cir. 2010) (interpreting prior iteration of Rule 26(b)). The rules instead permit "parties to flesh out allegations for which they have at least a modicum of objective support." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 465 (D.N.M. 2018) (quoting *Rivera v. DJO, LLC*, No. 11-cv-01119, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)). Overbroad discovery requests include those that employ omnibus terms like "concerning" or "relating to" in combination with broad categories of information. *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006); *see also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) (discussing duty to phrase discovery requests with "reasonable particularity"). In addition, failure to specify relevant timeframes, subject matter, or locations create overbreadth and undue burden. *Baylon v. Wells Fargo Bank, N.A.*, No. 12-cv-00052, 2013 WL 12164723, at *3 (D.N.M. Nov. 20, 2013); *see also Coolidge v. United States*, No. 21-cv-00307, 2022 WL 1026947, at *4 (D.N.M. Apr. 6, 2022).

So long as a discovery request appears relevant on its face, the party who objects to the discovery must show it falls outside Rule 26(b)(1)'s scope. *Cardenas v. Dorel Juv. Grp., Inc.*, 232 F.R.D. 377, 382–83 (D. Kan. 2005). The party must specify their objection; boilerplate statements—that a request is overly broad, unduly burdensome, or privileged, for example—will receive "boilerplate overrulings." *AerSale, Inc. v. City of Roswell*, No. 22-cv-00218, 2023 WL 8005213, at *5 (D.N.M. Nov. 17, 2023) (quoting *Beard v. Cnty. of Stanislaus*, No. 21-cv-00841, 2022 WL 2704856, at *8 (E.D. Cal. July 12, 2022)). In addition, a party cannot preserve objections by producing discovery notwithstanding or "without waiving" those objections. *See Heuskin v. D&E Transp., LLC*, No. 19-cv-00957, 2020 WL 1450575, at *2 (D.N.M. Mar. 25, 2020) (interrogatories); *see also Wagner Equip. Co. v. Wood*, No. 11-cv-00466, 2012 WL 12862336, at *6 (D.N.M. Nov. 21, 2012) (requests for production). A party must either disclose fully or object to the discovery request, withhold information as a result, and state it has done so. *See Smash*

3

*Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 447 (D. Utah 2020). Courts may exercise their discretion to modify improper discovery requests. Fed. R. Civ. P. 26(b)(2)(C); *see Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017).

### III.   ANALYSIS

**A.    The Court Will Require Verified Docu Service to Respond to a Modified Interrogatory No. 20 and Supplement Its Response to Interrogatory No. 21.**

For interrogatory no. 20, Escano asked Verified Docu Service to "[i]dentify the phone numbers [it] used to receive and/or send phone calls, voicemails, and/or text messages, at any time between January 1, 2013[,] to January 1, 2026." [Doc. 82-1, at 6]. Verified Docu Service objected to the interrogatory "on the grounds that it is overbroad and seeks information . . . not relevant to a party's claims or defenses." [Doc. 82-2, at 3].

Escano argues that Verified Docu Service relies on an improper boilerplate objection which the Court should overrule. [Doc. 82, at 3]. Furthermore, Escano asserts these numbers are relevant to showing Verified Docu Service made the calls at issue in this case, investigating whether the company has used numbers connected to illegal telemarketing, and responding to Verified Docu Service's contention that he may have consented to the calls. *Id.* at 4. Verified Docu Service objects that the 2013–2026 timeframe is overbroad due to Escano's allegation that the calls to him did not begin until 2018. [Doc. 89, at 3–4]. In addition, Verified Docu Service argues that Escano's allegations of "spoofing" means that no number connected to Verified Docu Service would have appeared on Escano's caller ID if his allegations are true. *Id.* at 5.

For interrogatory no. 21, Escano asked Verified Docu Service:

> [o]ut of the individuals with a business relationship with [Verified Docu Service]— including but not limited to employees, agents, contractors, and vendors—at any time between August 23, 2018[,] to May 12, 2024, how many of these individuals were provided with a copy of the document produced by [Verified Docu Service] in discovery and labeled with Bates Nos. DEFENDANTS--1 through DEFENDANTS—3?

4

[Doc. 82-1, at 5]. The document produced refers to Verified Docu Service's compliance procedures for the TCPA. Verified Docu Service objected that the interrogatory was overbroad and sought irrelevant information, but "subject to and without waiving" that objection, responded that it did not "keep a running tally" of who received its procedures. [Doc. 82-2, at 3].

Escano argues that his interrogatory has facial relevance to whether Verified Docu Service complied with the TCPA's requirements or willfully or negligently failed to do so. [Doc. 82, at 5]. To the extent Verified Docu Service could not answer the interrogatory with precision, it still had a duty to conduct a reasonable investigation and respond as completely as it could. *Id.* at 6. Verified Docu Service responds that its response was sufficiently complete. [Doc. 89, at 6–7].

>    1.    *Applicable law for interrogatories under Fed. R. Civ. P. 33*

A party may serve an interrogatory inquiring about any matter within the scope of discovery. Fed. R. Civ. P. 33(a)(2). For entity parties, an officer or agent must answer the interrogatory by furnishing "all available information." Fed. R. Civ. P. 33(b)(1)(B). "Available information" includes all information the agent or officer can obtain with reasonable effort, including from other agents, representatives, and current and former employees. *Dalton v. Town of Silver City*, No. 17-cv-01143, 2021 WL 4307149, at *6 (D.N.M. Sep. 22, 2021). However, the officer or agent need not expend undue labor and expense on an extensive investigation. *City of Las Cruces v. United States*, No. 17-cv-00809, 2021 WL 330062, at *8 (D.N.M. Feb. 1, 2021). If the party cannot give a full, fair, and specific answer to an interrogatory, its officer or agent must state so under oath and describe the efforts undertaken to give a complete response. *Id.*

>    2.    *The Court will order Verified Docu Service to respond to a modified version of interrogatory no. 20.*

The Court finds that although Verified Docu Service made improper objections, the interrogatory is facially overbroad. Verified Docu Service relied on a boilerplate objection by failing to specify what about the interrogatory was overbroad. *AerSale, Inc.*, 2023 WL 8005213,

5

at *5). While that error can subject the objection to overruling, the objection may still be considered where the interrogatory is facially overbroad. *Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 434 (D.N.M. 2022); *see also Renteria v. Liberty Mut. Grp.*, No. 23-cv-01093, 2025 WL 1827306, at *2 (D.N.M. July 2, 2025). Here, Escano requests phone records stretching years before he alleged Verified Docu Service made its unsolicited calls. [Doc. 82, at 4]; *Hurster v. Specialized Loan Servicing, LLC*, No. 21-cv-00318, 2021 WL 9540305, at *2 (E.D. Mo. Dec. 14, 2021) (discovery request for phone information prior to the dates the alleged TCPA violations occurred overbroad). While Escano asserts that he phrased the interrogatory to mirror Verified Docu Service's previous subpoenas, those subpoenas have since been withdrawn. *Id*. Escano also argues that this timeframe is relevant to Verified Docu Service's contention that he may have consented to any calls from them. *Id.* But Verified Docu Service made that contention in connection to its subpoenas, and Verified Docu Service now argues that any time prior to April 24, 2018, is irrelevant. [Doc. 89, at 4].

However, Verified Docu Service's phone numbers that it used to make calls during the time Escano alleges the TCPA violations occurred—April 24, 2018, to May 11, 2024—have facial relevance. *Hurster*, 2021 WL 9540305, at *2. Verified Docu Service objects to disclosing its numbers during this time frame on the grounds that Escano alleges they "spoofed" their numbers so they would not appear on Escano's caller ID. Therefore, Verified Docu Service's numbers would not match any of the numbers in Escano's phone logs. [Doc. 89, at 5]. The Court finds this argument unpersuasive. First, the numbers used are still relevant for identifying Verified Docu Service in any call logs already in Escano's possession or obtained through discovery. Second,

6

Verified Docu Service's argument paradoxically implies that the more successful a defendant is in obscuring unsolicited calls in a TCPA case, the less discoverable its call information becomes.[1]

Therefore, the Court ORDERS Verified Docu Service to disclose all phone numbers it used to receive and/or send phone calls, voicemails, and/or text messages between April 24, 2018, and May 11, 2024.

> 3.    *The Court overrules Verified Docu Service's objections to interrogatory no. 21.*

The Court overrules Verified Docu Service's objections to interrogatory no. 21. First, whether and how Verified Docu Service trained its employees on the requirements of the TCPA is facially relevant to whether they knowingly or recklessly disregarded those requirements. *Edeh v. Midland Credit Mgt., Inc.*, 748 F. Supp. 2d 1030, 1044–45 (D. Minn. 2010); 47 U.S.C. § 227(b)(3) (availability of treble damages). But Verified Docu Service objected with improper boilerplate objections and qualifications. *AerSale, Inc.*, 2023 WL 8005213, at \*5; *Smash Tech.*, 335 F.R.D. at 447. Second, Rule 33 imposes an obligation on entity parties to furnish "all available information" that it can obtain through a reasonable search of its records and employees. Fed. R. Civ. P. 33(b)(1)(B); *City of Las Cruces*, 2021 WL 330062, at \*8. Thus, even if Verified Docu Service cannot identify individual employees, agents, contractors, and vendors, it still had an obligation to investigate and respond to the thrust of Escano's interrogatory: what fraction of Verified Docu Service's employees, agents, contractors, and vendors were informed of their TCPA obligations pursuant to company policy? To the extent Verified Docu Service cannot answer the interrogatory completely, it has an obligation to describe what efforts it took to do so.

Therefore, the Court overrules Verified Docu Service's objections to interrogatory no. 20 and ORDERS the company to respond to the interrogatory as required under Fed. R. Civ. P. 33.

---

[1] Verified Docu Service also argues that the Supreme Court in *Oppenheimer Fund* established that discovery of events and facts outside of a claim's statute of limitations is improper. [Doc. 89, at 4]. But *Oppenheimer* interpreted a prior version of Rule 26(b)(1) and otherwise stated that events occurring prior to an "applicable limitations period" can be relevant to the issues in a case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978).

**B.    Verified Docu Service's Response to Request for Admission No. 5 Is Insufficient.**

For request for admission no. 5, Escano asked Verified Docu Service to "[a]dmit that the email produced in discovery and labeled with Bates No. ESCANO-000008, is an email sent by Jacob Perez on October 24, 2022." [Doc. 82-1, at 6]. Verified Docu Service responded that it "is without sufficient information to either admit or deny this request for admission on the grounds that Jacob Perez is no longer associated with Verified Docu Service." [Doc. 82-3, at 2].

Escano argues that the response is insufficient because Verified Docu Service had a duty to make a reasonable investigation to determine the author of the October 24th email, even if the actual author had since departed the company. [Doc. 82, at 7]. If it still cannot identify the author, Verified Docu Service must specify the efforts it made to do so. *Id.* Verified Docu Service responds that only Jacob Perez could verify if he wrote the email, but it has no obligation to inquire with former employees or otherwise describe its efforts to answer the request. [Doc. 89, at 8–10].

*1.    Applicable law for requests for admission under Fed. R. Civ. P. 36*

Pursuant to Rule 36, a party may serve another party a written request to admit or deny the truth of any matter within the scope of discovery. Fed. R. Civ. P. 36(a)(1). Unlike other discovery methods designed to obtain unknown information, requests for admission "expedite trials by establishing as true certain material facts without the necessity of formal proof." *Keen v. Detroit Diesel Allison*, 569 F.2d 547, 554 (10th Cir. 1978) (citations omitted). A party may ask for a factual admission, a party's belief about how relevant law applies to certain facts, or the genuineness of a described document. Fed. R. Civ. P. 36(a)(1)(A)–(B). However, a request for admission may not ask about unrelated law nor demand a party concede a legal conclusion. *Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. 551, 554 (D.N.M. 2011).

In response to a request for admission, a party must either admit, deny, state with detail why the party can do neither, or assert that it does not possess the knowledge to admit or deny

8

despite reasonably inquiry. Fed. R. Civ. P. 36(a)(4). The party may do so to all or to part of the request. *Id.* If a request for admission threatens to convey an unwarranted or unfair inference, a party may also qualify or contextualize their admission or denial. *Lowrey v. Portis*, No. 23-cv-00372, 2024 WL 2781892, at *5 (D.N.M. May 30, 2024).

Performing a "reasonable inquiry" for entity parties means consulting officers, administrators, agents, or other personnel who conceivably and realistically could answer or lead to the answer to the request for admission. *SEC v. Goldstone*, 300 F.R.D. 505, 524 (D.N.M. 2014). In this District, a party's statement that it undertook a reasonable inquiry without adding further detail is sufficient. *Id.*; *Stark-Romero*, 275 F.R.D. at 555; *N.M. ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 405 F. Supp. 3d 1233, 1252–53 (D.N.M. 2019).

2.      *Verified Docu Service must supplement its response to request for admission no. 5.*

The Court finds that Verified Docu Service gave an improper response to the request for admission. While this District does not require detailed descriptions of the efforts a party takes to respond to a request for admission, Verified Docu Service still has an obligation to make those efforts. Fed. R. Civ. P. 36(a)(4). Verified Docu Service argues it satisfied that obligation by stating the alleged author of the email no longer works for it, and Rule 36 imposes no obligations on an entity party to contact a former employee to answer a request for admission. [Doc. 89, at 8–10]. As support, Verified Docu Service relies on the Court's decision in *Oliveros v. Board of County Commissioners*, in which the Court cited language from out-of-circuit cases that a company does not need to interview third parties or otherwise bound itself to the representations of third parties through a request for admission. *Oliveros v. Bd. of Cnty. Comm'rs*, No. 02-cv-00732, 2003 WL 27385057, at *2–3 (D.N.M. July 14, 2003).

The Court finds these decisions inapplicable. In *Oliveros* and other decisions, a "reasonable inquiry" under Rule 36 did not categorically include *or* exclude conferring with former employees.

9

*E.g.*, *Oliveros*, 2003 WL 27385057, at *2 (citing *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997)); *Dubin v. E.F. Hutton Grp. Inc.*, 125 F.R.D. 372, 374 (S.D.N.Y. 1989). In these cases, the courts found that conferral with a third party was unnecessary when it would require the responding party to take on excessive time and expense, effectively depose the third party on behalf of the requesting party, or be bound by the averments of someone with conflicting interests. *Oliveros*, 2003 WL 27385057, at *3; *T. Rowe Price Small-Cap Fund*, 174 F.R.D. at 44; *Dubin*, 125 F.R.D. at 374–75 (collecting cases); *Al-Jundi v. Rockefeller*, 91 F.R.D. 590, 594 (W.D.N.Y. 1981). Thus, Verified Docu Service failing to consult with the alleged author of the email based on his employment status alone was improper. Furthermore, the request for admission did not ask Verified Docu Service to admit something only Jacob Perez could know, at least not the face of the request; Verified Docu Service does not indicate it made any effort to review its records, archives, or consult with active employees to determine the email's author. *See Goldstone*, 300 F.R.D. at 524.

Therefore, the Court finds that Verified Docu Service's response to request for admission no. 5 is incomplete and ORDERS Verified Docu Service to supplement its answer pursuant to the requirements of Rule 36(a)(4).

### IV.  <u>CONCLUSION</u>

For the reasons above, the Court GRANTS IN PART Escano's motion to compel and ORDERS Verified Docu Service to respond to the modified interrogatory no. 20, interrogatory no. 21, and request for admission no. 5 as directed above. Pursuant to Rule 37(a)(5)(C), the Court may apportion the parties' attorneys fees and costs for their briefing on a motion to compel when the motion is granted in part and denied in part. The Court finds that an award of reasonable fees and costs to Escano is proper. While the Court did not grant Escano's motion in full, it only did so

because Escano requested phone records for dates that Verified Docu Service initially put at issue with its subpoenas before withdrawing them.

Consequently, Escano may file a motion for his reasonable attorney fees and costs, if any, within **fourteen (14) days** of this Order. Verified Docu Service may file a response, if any, contesting the amount of fees and costs requested within **fourteen (14) days** of Escano's filing of his motion for fees and costs. Escano may file a reply, if any, within **seven (7) days** of Verified Docu Service filing its response.

IT IS SO ORDERED.

_____
HON. JERRY H. RITTER
United States Magistrate Judge

11