# EXHIBIT E

Deposition of Jarren Clores

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUBEN ESCANO,

Plaintiff,

v. Case No. 2:25-cv-00513-JB-JHR

VERIFIED DOCU SERVICE, INC., and
JARREN CLORES a/k/a BRANDON CLORES,

Defendants.

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF JARREN CLORES
Volume I
May 29, 2026
1:07 p.m.

PURSUANT TO THE NEW MEXICO RULES OF CIVIL PROCEDURE, this deposition was:

TAKEN BY: RUBEN ESCANO, PLAINTIFF PRO SE

REPORTED BY: JACQUELINE R. LUJAN, CCR #91
(Via videoconference)
Trattel Court Reporting (505)830-0600
P.O. Box 36297
Albuquerque, NM 87176-6297

VIDEOTAPED BY: BRIAN PADILLA, Legal Video Specialist
(Via videoconference)
Trattel Court Reporting
(505)830-0600



Electronically signed by Jacqueline Lujan (401-117-123-8533) 2fc5e7b0-1f3e-4e94-ab54-92faf8f23823

Page 34

Q. Are there any other companies that you started?
**A. No.**
Q. And have you been the officer of any other companies?
**A. No.**
Q. Are you familiar with a company named BCO Consulting Services?
**A. Yes.**
Q. And what is BCO Consulting Services?
MR. PHILLIPS: Objection, lacks foundation.
MR. ESCANO: You can answer.
**A. That was my brother's company.**
Q. And what is your brother's name?
**A. Brandon Clores.**
Q. Do you have an understanding of what BCO Consulting Services does?
MR. PHILLIPS: Objection, lacks foundation.
MR. ESCANO: You can answer.
**A. Yes.**
Q. And what does BCO Consulting Services do?
**A. They were also a document preparation company for student loans.**
Q. And how old is your brother?
MR. PHILLIPS: Objection. This is entirely irrelevant. I'm going to direct him not to answer. It's

Page 35

not doing a roving investigation into the family background. Brandon Clores has nothing to do with this litigation. I direct him not to answer.
Do you have --
THE COURT REPORTER: I'm sorry. What did you say?
MR. PHILLIPS: I said, "Do you have another question, Mr. Escano?"
Q. Have you ever worked for BCO Consulting Services?
**A. No.**
Q. When did you first learn of the existence of BCO Consulting Services?
**A. When did I first learn?**
Q. Yeah.
**A. First learn -- sorry. Repeat the question.**
Q. Yeah, certainly. When did you first learn of the existence of BCO Consulting Services?
**A. I can't tell you. That's my brother's company.**
Q. So I'm asking about your personal recollection, not about --
**A. Well, when you said, "First learned" --**
Q. Yes.
**A. -- I don't know when I learned it.**
Q. Was it before or after 2020?

Page 36

**A. I'm pretty sure it was before.**
Q. Does BCO Consulting Services conduct telemarketing?
**A. No.**
MR. PHILLIPS: Objection, lacks foundation. He doesn't -- he has no idea of their operations
MR. ESCANO: You can answer the question.
**A. It's my brother's company. I don't know anything.**
Q. You don't know anything about BCO Consulting Services?
**A. No.**
Q. So is your testimony today under penalty of perjury is that you do not know anything about BCO Consulting Services?
MR. PHILLIPS: Objection. He's answered to the extent of his knowledge. Misstates prior testimony.
MR. ESCANO: I'm asking him a question.
Please answer the question.
MR. PHILLIPS: He's answered to the extent of his knowledge.
MR. ESCANO: He can say that, if that's true.
THE WITNESS: What was the question?
Q. I'll re-ask it. Is your testimony today under penalty of perjury that you do not have any knowledge of

Page 37

BCO Consulting Services?
MR. PHILLIPS: Objection, asked -- that misstates prior testimony.
MR. ESCANO: You can answer.
MR. PHILLIPS: He's answered to the extent of his knowledge. He told you that it was a document preparation company. It wasn't his company.
MR. ESCANO: Your objection had been noted, Mr. Phillips.
MR. PHILLIPS: If you want to subpoena -- no.
MR. ESCANO: Mr. Clores, please answer the question.
THE WITNESS: What's the question?
MR. ESCANO: I'll re-ask the question. Mr. Phillips, you may object, if appropriate, but Mr. Clores would still need to answer. I'll re-ask the question.
Q. Mr. Clores, is it you're testimony today under penalty of perjury that you do not have any knowledge of BCO Consulting Services?
MR. PHILLIPS: Objection, misstates prior testimony. He's answered to the extent of his knowledge already.
MR. ESCANO: You can answer.
THE WITNESS: You already asked me that



Electronically signed by Jacqueline Lujan (401-117-123-8533) 2fc5e7b0-1f3e-4e94-ab54-92faf8f23823

Page 38

question, and I answered it.
MR. ESCANO: I didn't ask you that question. You just have to answer the question that I've asked. I'll ask it again.
Q. (By Mr. Escano) Mr. Clores, is it your testimony today under penalty of perjury that you do not have any knowledge of BCO Consulting Services?
MR. PHILLIPS: Objection. He's already --
THE WITNESS: I answered that.
MR. PHILLIPS: It misstates his prior testimony. He's already told you his knowledge. Now you're saying -- it completely misrepresents his prior testimony. He's already testified that he did have some knowledge, and he gave you that knowledge.
THE WITNESS: Exactly.
MR. ESCANO: Please answer the question. You can answer yes, or you can answer no.
MR. PHILLIPS: That misstates -- no. I'm going to -- I'm directing him not to answer that question. He's answered. He gave you the extent of his knowledge, and now you're saying that he doesn't have any knowledge. That's a completely unfair question. That's not what he said. He said he had some knowledge. He gave you the knowledge. Now you're telling him, "Oh, so you don't have any knowledge?" It's not a fair question. Ask him a fair

Page 39

question.
Q. So Mr. Clores, is it true that you actually do have knowledge of BCO Consulting Services?
MR. PHILLIPS: Objection, vague and ambiguous as to the extent and foundation of the knowledge.
Go ahead and answer, if you want.
**A. Yes.**
Q. Have you ever worked in telemarketing?
**A. No.**
Q. Have you ever worked in telesales?
MR. PHILLIPS: Objection, vague and ambiguous.
MR. ESCANO: I'll withdraw it.
Q. Have you ever worked in sales conducted over the telephone?
**A. Yes.**
Q. What -- at what companies did you work in such business?
**A. Student loan companies.**
Q. Which student loan companies?
**A. The ones I worked at from 2014 to 2019.**
Q. How about after 2019?
**A. That's when I started my business.**
Q. Sorry. Can you say that again?
**A. After 2019, is the pandemic, and then I started my own business afterwards.**

Page 40

Q. And that business was VDS?
**A. Correct.**
Q. And did you ever conduct any sales over the telephone at VDS?
**A. No.**
MR. PHILLIPS: Jarren, do you need a break? We've been going an hour and 15 minutes. Are you okay?
THE WITNESS: I'm okay.
Q. Does VDS earn revenue?
**A. Yes.**
Q. How does VDS earn revenue?
**A. From our services.**
Q. What services?
**A. Document preparation.**
Q. Any other services beyond that?
**A. No.**
Q. How does VDS earn revenue from document preparation?
**A. Because the client pays a fee.**
Q. Beyond that fee, does VDS earn any other revenue?
**A. No.**
Q. Who owns -- withdrawn.
Does anyone own VDS?
**A. Myself.**

Page 41

Q. Beyond you, is there anyone else that owns VDS?
**A. Matt.**
Q. And beyond you and Matt, is there anyone else that owns VDS?
**A. No.**
Q. Do you and Matt share ownership equally?
**A. Yes.**
Q. And beyond -- withdrawn.
And who are the officers of VDS?
MR. PHILLIPS: Objection, vague, ambiguous, lacks foundation.
Do you understand what an officer is?
THE WITNESS: Yes
MR. ESCANO: You can answer.
**A. Myself and Matt.**
Q. Beyond -- beyond you and Matt, are there any other officers of VDS?
THE COURT REPORTER: I'm sorry.
THE WITNESS: A guy named Abhi.
Q. How do you spell that?
**A. A-b-h-i.**
Q. And what is Abhi's last name?
**A. Swarmi. It's S-w-a-r-m-i.**
Q. Could it actually be spelled S-w-a-m-i?
**A. I think so. I haven't talked to that guy in a**